IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FELICIA ANN KINCHEN, §<br>    Plaintiff, §<br> §<br>v. §<br> §   Civil Action No. 3:16-CV-1102-BK<br>NANCY A. BERRYHILL, §<br>Acting Commissioner of Social §<br>Security Administration, §<br>    Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

The parties have consented to proceeding before the magistrate judge. Doc. 14. Now before the Court are the parties' cross motions for summary judgment. Doc. 21; Doc. 22. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* is **DENIED**, and the Commissioner's *Motion for Summary Judgment* is **GRANTED**.

**I.  BACKGROUND**

**A.  Procedural History**

Plaintiff Felicia Ann Kinchen seeks judicial review of a final decision by the Commissioner denying her application for disability insurance benefits and supplemental security income payments under the Social Security Act ("the Act"). In July 2012, Plaintiff filed for benefits, alleging disability beginning June 2, 2011. Doc. 15-7 at 24, 29. Plaintiff later amended her disability onset date to December 25, 2011. Doc. 15-3 at 39. Her application subsequently was denied at all administrative levels. Doc. 15-3 at 2, 25.

    **B.**    <u>Factual Background</u>

Plaintiff was 37 years old on her amended disability onset date. Doc. 15-3 at 42. She attended high school until the ninth grade and has past relevant work as a caregiver, nurse aide, quality control inspector, and sitter. Doc. 15-7 at 30.

From about 2010 through 2012, Plaintiff was primarily treated by Dr. Vivian Okechukwu, M.D., who saw her for a variety of ailments, including, *inter alia*, back pain, diabetes, and hypertension. Doc. 16-7 at 25; Doc. 16-5 at 31; Doc. 16-6 at 19; Doc. 16-7 at 21. In November 2012, Dr. Okechukwu completed a one-page "Medical Release/Physician's Statement" check-mark form, opining that Plaintiff was unable to work due to her morbid obesity and diabetes, and that her disability, though not permanent, was expected to last more than six months. Doc. 15-7 at 78.

In September 2012, Dr. Kimberly Hewitt, M.D., completed a physical Residual Functional Capacity ("RFC") assessment in which she concluded that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently, and stand/walk/sit for six hours in an eight-hour workday. Doc. 16-7 at 9. Dr. Hewitt's findings were affirmed in June 2013 by Dr. Robin Rosenstock, M.D. Doc. 16-7 at 64.

Later that month, Dr. Jim Cox, Ph.D., completed a mental RFC assessment, opining that Plaintiff "retains [the] capacity to understand, remember and carry out detailed but not complex instructions, make simple decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings." Doc. 16-7 at 60-62. In May 2014, Plaintiff was treated by Dr. Gary Worth, M.D., complaining of memory problems following a car accident. Doc. 16-11 at 50. Dr. Worth found no suicidal or homicidal ideation and diagnosed Plaintiff with

2

schizoaffective disorder, social phobia, posttraumatic stress disorder, and rule out schizophrenia. Doc. 16-11 at 50.[1]

At the hearing before the ALJ, Plaintiff testified that she cannot work because she "[does not] like people," Doc. 15-3 at 44; cannot finish tasks, listen, concentrate, follow verbal instructions, or handle stress well, Doc. 15-3 at 44, 47; experiences pain over "pretty much [her] whole body," Doc. 15-3 at 45; has numbness and tingling in her hands and legs, Doc. 15-3 at 45; and has difficulty lifting, sleeping, and standing for long periods of time, Doc. 15-3 at 46.

## C.     The ALJ's Findings

In November 2014, the ALJ denied Plaintiff's application for benefits, finding that Plaintiff had the RFC to lift and carry 20 pounds occasionally and ten pounds frequently, and "mentally, she can understand, remember and carry out only simple tasks." Doc. 15-3 at 17, 20. Additionally, the ALJ determined that while Plaintiff "cannot interact with the general public or work in coordination/cooperation with coworkers to complete work tasks[, s]he can interact with supervisors occasionally during the workday." Doc. 15-3 at 20. The ALJ found that Plaintiff could not return to her past work, but she could perform other work in the national economy and thus was not disabled. Doc. 15-3 at 24-25.

---

[1] This list of diagnoses results from cross-referencing the diagnostic codes (295.70, 300.23, and 309.81) contained in the Assessment portion of Dr. Worth's treatment notes, with the International Classification of Diseases, Ninth Revision, Clinical Modification ("ICD-9-CM") system. *Available at* https://www.cms.gov/Medicare/Coding/ICD9ProviderDiagnosticCodes/codes.html.

## II. LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which lasts or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, expert

4

vocational testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT

Plaintiff's sole claim is that the ALJ's RFC determination failed to take into account all of her limitations, arguing that she is "significantly more limited" than the ALJ concluded and "unable to perform light work or basic work related mental functions a [sic] sustained basis." Doc. 21-1 at 4-5. In support, Plaintiff points to (1) her hearing testimony, (2) the diagnoses and symptoms reported in her medical records, and (3) Dr. Okechukwu's check-box opinion that Plaintiff is disabled and unable to work for six months. Doc. 21-1 at 5-7.

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence. Doc. 22 at 9. Specifically, the Commissioner contends that the ALJ properly (1) considered the opinions of Drs. Hewitt, Rosenstock, and Cox, (2) considered Plaintiff's medical record, and (3) discounted Dr. Okechukwu's statement.

5

Doc. 22 at 10-16.  The Commissioner thus concludes that, in the absence of reversible error, remand is not required.  Doc. 22 at 17.

### IV. ANALYSIS[2]

In support of her motion, Plaintiff primarily cites her hearing testimony, as well as her subjective complaints noted in the medical records – essentially asking the Court to find that such evidence supports her disability claim.  Doc. 21-1 at 5-7.  As a preliminary matter, however, the Court notes that it is tasked not with reweighing the evidence, or determining whether evidence supports Plaintiff's disability claim, but with determining whether the ALJ's decision is supported by substantial evidence.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Upon review of the record evidence in this case, the Court finds that the ALJ's RFC determination is supported by substantial evidence – irrespective of whether this Court would have reached the same conclusion.

The RFC is an assessment, based upon all of the relevant evidence, of a claimant's ability to work, despite her impairments.  20 C.F.R. § 404.1545(a).  Stated differently, it is the most a claimant can do, notwithstanding her physical and mental

---

[2] The parties should note that in considering their summary judgment arguments, the Court has relied upon the parties' assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted). Additionally, to aid in the efficient resolution of social security appeals, the Court requests that, in the future, counsel for both parties list the ECF document and page numbers, rather than the transcript page numbers, when citing to the administrative record in their briefs.

limitations.  *Id.*  The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether the claimant can work.  20 C.F.R. § 404.1520(f).  The RFC determination falls solely to the ALJ, who alone is responsible for resolving any conflicts in the evidence.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam).

### A.     The ALJ's Physical RFC Determination

The Court finds that the ALJ's physical RFC determination is supported by substantial evidence.  First, the ALJ considered and discussed Plaintiff's medical records, giving great weight to the opinions of Drs. Hewitt and Rosenstock, the only physicians to opine on Plaintiff's physical work-related abilities, both of whom concluded that Plaintiff was not disabled.  Doc. 15-3 at 23; *see* Doc. 16-7 at 8-15, 64.  Specifically, both found that Plaintiff can (1) lift/carry 50 pounds occasionally and 25 pounds frequently, i.e. perform medium work; and (2) stand/sit/walk for six hours in an eight-hour workday.  Doc. 16-7 at 9-12, 64.

At the hearing, Plaintiff alleged difficulties lifting/carrying objects, specifically noting an inability to lift/carry her infant granddaughter without experiencing pain.  Doc. 15-3 at 46.  Giving Plaintiff's testimony "all benefit of the doubt," the ALJ rejected the doctors' lift/carry assessment and determined that Plaintiff could only lift 20 pounds occasionally and 10 pounds frequently, i.e. perform light work.  Doc. 15-3 at 23.  This determination takes into account Plaintiff's allegations and comports with her medical

7

records and the various examinations where she denied any weakness, and/or was found to have normal range of motion, strength, and gait.[3]

To the extent Plaintiff argues that the ALJ erred in failing to specifically discuss Dr. Okechukwu's opinion denoted by check-mark, any such error does not undermine the ALJ's RFC determination.  While the opinion of a treating physician is generally afforded considerable weight, a statement by a medical source that a claimant is "disabled" or "unable to work" is not a medical opinion entitled to deference, but rather a legal conclusion "reserved to the Commissioner."  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam); *see* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3).  Dr. Okechukwu opined only that Plaintiff was unable to work and that her disability, while not permanent, was expected to last for more than six months.  Doc. 15-7 at 78.  These statements are precisely the type that an ALJ need not credit.  *Frank*, 326 F.3d at 620.  Thus, any error by the ALJ was harmless.  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam) (noting that remand is required only if the error "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision").

## B.   **The ALJ's Mental RFC Determination**

Similarly, the ALJ's mental RFC determination is supported by substantial evidence.  In his decision, the ALJ considered and discussed Plaintiff's mental health

---

[3] *See* Doc. 16-2 at 5-6 (finding full range of motion, full motor strength in all extremities, and normal gait); 16-3 at 4-5 (denying weakness and finding normal joint range of motion), 14 (finding normal range of motion), 60 (denying joint erythema, stiffness and muscle pain); Doc. 16-7 at 20 (denying muscle pain and finding normal range of motion), 28 (finding normal range of motion), 40 (noting normal posture and gait); Doc. 16-11 at 32-33 (denying weakness, joint pain, muscle pain, neck pain, back pain, or joint swelling/pain).

8

treatment records that were obtained from various practitioners. Doc. 15-3 at 22-23. In particular, he gave great weight to Dr. Cox's opinion. Doc. 15-3 at 20. Dr. Cox found that Plaintiff's mental impairments mildly limited her activities of daily living and moderately limited her ability to maintain social functioning, concentration, persistence, or pace. Doc. 16-7 at 56. This included moderate difficulties remembering and following detailed instructions, performing detailed tasks, interacting with the general public, and responding to criticism from supervisors. Doc. 16-7 at 60-61. However, in the narrative section of the assessment, Dr. Cox concluded that Plaintiff "retains [the] capacity to understand, remember and carry out detailed but not complex instructions, make simple decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings." Doc. 16-7 at 62.[4]

Moreover, the ALJ included these comprehension and interpersonal limitations in his mental RFC determination when he limited Plaintiff to jobs that (1) require her to understand, remember, and carry out only simple tasks; and (2) do not require cooperation/coordination with coworkers, interaction with the general public, or more than occasional interaction with supervisors during the workday. *See* Doc. 15-3 at 20, 22, 44; Doc. 16-7 at 62. Given the essentially wholesale incorporation of Dr. Cox's assessment into the ALJ's mental RFC assessment, the Court finds that the RFC is supported by substantial evidence. *See Gipson v. Astrue*, No. 10-CV-1413-BK, 2011 WL

---

[4] As Defendant points out, under the Commissioner's *Program Operations Manual System* (POMS) governing mental limitations, the ALJ must assess a claimant's RFC by using this narrative to decide the claimant's ability to meet the mental demands of work. Doc. 22 at 16 (citing POMS, DI 25020.010B.1 (*available at* <https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010>)).

9

540299, at *6 (N.D. Tex. Feb. 11, 2011) (Toliver, J.) (finding the ALJ's mental RFC assessment was supported by substantial evidence where it "closely track[ed] the language in the consultative psychologist's narrative") (citing *Greenspan*, 38 F.3d at 236; POMS, DI 25020.010B.1).

In summation, the ALJ recognized that Plaintiff's impairments were severe, but determined they were not disabling. Doc. 15-3 at 18, 25. While Plaintiff may believe that her hearing testimony and medical records warrant a more restrictive RFC and/or finding of disability, as stated previously, the Court can neither reweigh the evidence, nor substitute its judgment for that of the Commissioner's. *Greenspan*, 38 F.3d at 236. The Court thus concludes that the Commissioner's decision is supported by substantial evidence.

## IV. CONCLUSION

In light of the foregoing, Plaintiff's *Motion for Summary Judgment*, Doc. 21, is **DENIED**, the Commissioner's *Motion for Summary Judgment*, Doc. 22, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on July 20, 2017.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE